# EXHIBIT
# 2

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JOSEPH PEPICELLI,                     .
                                      . C.A. No.
            Plaintiff,                . 1:23-cv-12406-MPK
                                      .
       vs.                            . Lynnfield,
                                      . Massachusetts
EVERETT POLICE DEPARTMENT,            .
CITY OF EVERETT, POLICE CHIEF         . July 14, 2025
STEVEN MAZZIE, and LIEUTENANT         .
NEIL BURKE,                           . 10:11 a.m.
                                      .
            Defendants.               .
                                      .
. . . . . . . . . . . . . . . . . .   .

DEPOSITION OF

JOSEPH PEPICELLI

Taken by the Defendants

ROBERT PICHARDO, CER-2744
Esquire Deposition Solutions



                    APPEARANCES OF COUNSEL


On behalf of Plaintiff, JOSEPH PEPICELLI:

     CASSIDY E. ALMON, ESQ.
     LAW OFFICES OF STEVEN J. MARULLO
     435 Newbury Street
     Suite 217
     Danvers, Massachusetts 01923
     617-723-1111


On behalf of Defendant, EVERETT POLICE DEPARTMENT, CITY OF
EVERETT, POLICE CHIEF STEVEN MAZZIE and LIEUTENANT NEIL
BURKE:

     NORA R. ADUKONIS, ESQ.
     LITCHFIELD CAVO LLP
     6 Kimball Lane
     Suite 200
     Lynnfield, Massachusetts 01940
     781-309-1500
     adukonis@litchfieldcavo.com



Q.   So after the communications with Dr. Tetreault in June of 2020, did you ever see her again?

A.   I -- I don't remember.  I don't -- I don't think so, but I had to refer to giving myself my own physical -- ice, TENS unit, because I was in pain.

Q.   I can take that back.

So in your charge of discrimination, you describe an incident with Neil Burke?

A.   Yes.

Q.   That incident occurred in November of 2019?

A.   Which one?  Which one?  There was a couple of them. Well, one -- one, I wasn't on the job yet.

Q.   So?

A.   So of 2019, oh, yeah, I think it was the -- the detail one.

Q.   And when did that occur?

A.   When did what occur?

Q.   The incident that you described in your complaint as --

A.   The exact time and date, no, I don't know.  Do you want to show me?

Q.   Well, you say, "On or about August 20, 2019, about the time that Mr. Pepicelli came into conflict with Chief Mazzie, Mr. Pepicelli called Burke for assistance with a problem during an automobile show"?



A.   Yep, yeah.  Okay.

Q.   So is that the correct date?

A.   Yeah, I guess so.

Q.   And as a result of that incident, you submitted a narrative to the chief?

A.   Yeah.

Q.   I'll show you a document.

A.   Yep.  I remember, yes.

Q.   Is that the narrative that you submitted to the chief?

A.   Yeah.  Oh, yeah.  Yes, it was.

        MS. ADUKONIS:  Can we have this marked as the next exhibit?

        THE REPORTER:  Yes, ma'am.

        (Exhibit 7 was marked for identification.)

        THE WITNESS:  I'm sorry.

BY MS. ADUKONIS:

Q.   When did you draft that?

A.   I don't remember the exact date.  This was -- like I said, it was ongoing for years.

Q.   So were you still actively going out on patrol and working --

A.   Yes.

Q.   Was this before COVID or after COVID?

A.   When I wrote -- when the incident happened with Burke



A.   Probably not all of them.  Not all of them.

Q.   Were there any incidents in 2020 that you left out of your charge of discrimination?

A.   I don't remember.

Q.   Were there any incidents that occurred after -- and specifically with Neil Burke that occurred after the November 2019 incident described in your charge of discrimination?

A.   I don't remember.

Q.   Is there anything in the world that would help you remember?

A.   Yeah.  If you had it written down, you could show me.

Q.   If I had what written down?

A.   If you have the information written down and the dates, if you show me, I probably could recall, but like I said, there were so many incidences that happened, it's just one big bungle confusion.  My injuries, I had COVID, I was sick for two and a half years.

Q.   Now, in your complaint, you allege that Chief Mazzie interfered with your 111F benefits?

A.   Yes, he did.  He told me he would -- he -- he pretty much told me he did.

Q.   Now, do you believe that -- or do you allege that Mr. Burke had anything to do with your 111F benefits?

A.   No.  That was me and the chief.



Q.   Now, do you allege that Mr. Burke had anything to do with your disability coverage at all?

A.   One has to do with the chief.  The discrimination charges have to do with Burke.

Q.   Now, you have brought some causes of action concerning disability discrimination.  Do you allege that the City of Everett did not modify your working rules or working environment in a way that you needed in order to be functional despite a disability?

A.   I'm kind of not getting you, but are you trying to say that the city -- the city altered for me; is that what you're saying?

Q.   No.  I'm asking you -- well, first of all, do you allege that you are disabled?

A.   Yes.

Q.   And what is your disability?

A.   My shoulder --

Q.   And when --

A.   -- my neck, my back.

Q.   And did you request from the City of Everett or the Everett Police Department, any modifications to your working schedule or your working environment to allow you to work despite your disability?

A.   We had no -- if you're asking me if we had any light duty, we didn't.

