|  |  |  |
|---|---|---|
| JOSEPH PEPICELLI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:23-cv-12406-MPK |
| | ) | |
| EVERETT POLICE DEPARTMENT, | ) | |
| CITY OF EVERETT, | ) | |
| POLICE CHIEF STEVEN MAZZIE, | ) | |
| and LIEUTENANT NEIL BURKE, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT NEIL BURKE'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, Joseph Pepicelli, through undersigned counsel, and hereby opposes Defendant Neil Burke's Motion for Summary Judgment. Defendant Burke's admissions alone are sufficient to defeat summary judgment. Burke's motion further relies on technical defenses, including statute of limitations and administrative exhaustion, that are contradicted by the record and applicable law. At a minimum, the evidence presents genuine disputes of material fact requiring resolution by a jury. Accordingly, Burke's motion should be denied in its entirety.

## ARGUMENT

I.      THE STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.,*

950 F.2d 816, 822 (1st Cir. 1991), *quoting Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5 (1st Cir. 1990). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead "must present affirmative evidence." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Applying this standard, the Plaintiff can demonstrate that at minimum, there are genuine issues of material fact as to Plaintiff's claims.

## II. PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED

Defendant Burke argues that Plaintiff's claims are time-barred because the primary incident occurred in 2019. This argument improperly characterizes the conduct as a discrete, isolated act, and ignores the nature of the a hostile work environment claim. *See O'Rourke v. City of Providence,* 235 F.3d 713, 730 (1st Cir. 2001) (describing the continuing violation doctrine as an "equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts…").

Here, Burke's admitted use of a derogatory ethnic slur by a superior officer, combined with the employer's failure to take any corrective action, created a hostile work environment that did not end with the initial statement. The conduct was reported, investigated, and left unremedied, allowing its effects to persist. At a minimum, the timeliness of Plaintiff's claims presents a factual issue that cannot be resolved on summary judgment.

## III. FAILURE TO NAME BURKE IN MCAD CHARGE IS NOT FATAL

Burke argues that Plaintiff's claims fail because he was not formally named as a respondent in the MCAD charge. This argument fails. Courts recognize that claims may proceed against

individuals not formally named in an administrative charge where there is a "substantial identity" between the named and unnamed parties and the purposes of the administrative process (notice and opportunity to conciliate) are satisfied. *See Chatman v. Gentle Dental Ctr. Of Waltham,* 973 F. Supp. 228, 235 (D. Mass. 1997) ("failure to name a party as a respondent in a charge filed with the Massachusetts Commission Against Discrimination does not preclude a later civil action against that party if the conduct of the party was put in issue by the charge and the party had notice of and an opportunity to conciliate that charge").

Here, Plaintiff's MCAD charge specifically identified Burke's conduct, including his use of a derogatory ethnic slur. *Exh. 43-4.* Moreover, the City investigated the allegations, Burke was aware of the complaint, and the incident was addressed internally. Thus, Burke had actual notice of the claims and an opportunity to respond.

IV.     MTCA DOES NOT WARRANT SUMMARY JUDGMENT

Defendant argues that Plaintiff's claims are barred by the Massachusetts Torts Claims Act ("MTCA"). Plaintiff's primary claims against Burke arise from intentional discriminatory conduct and violations and statutory and constitutional rights. As described in Section V below, Burke's admitted use of a derogatory ethnic slur constitutes direct evidence of intentional discrimination. Additionally, whether Burke was acting within the scope of his employment is a question of fact.

V.     ADMITTED USE OF ETHNIC SLUR CONSTITUTES DIRECT EVIDENCE OF DISCRIMINATION

Burke admitted that he referred to Plaintiff as a "guinea," a derogatory slur directed at individuals of Italian heritage. *Exh. 43-1.* This admission is direct evidence of discriminatory animus. The conduct was explicitly discriminatory, made in reference to the Plaintiff, made by a

Lieutenant within the department, and confirmed through multiple sources. *Exh. 46-9.* Plaintiff also reported that Burke engaged in similar conduct over a period of years. *Exh. 46-6.* At a minimum, this evidence presents a triable issue of fact. Courts have held that isolated incidents, if serious enough, amount to discrimination. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Defendant's motion additionally argues that Burke did not supervise Plaintiff and that Plaintiff was not present when the slur was made. Neither argument supports summary judgment. The record reflects that Burke was a Lieutenant responsible for overseeing officers and daily operations, and therefore held a position of authority in the workplace. *Exh. 43-1.* Additionally, Plaintiff's physical absence at the moment the slur was uttered is legally irrelevant. The undisputed facts show that the conduct was reported, it triggered an internal investigation, and it was acknowledged by the department. Whether the conduct created a hostile work environment is, at a minimum, a question for the jury.

Ultimately, Defendants' motion rests on competing interpretations of the evidence and challenges to Plaintiff's credibility. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150. Where, as here, the record contains direct evidence of discriminatory conduct, conflicting accounts of key events, and evidence supporting retaliatory motive and adverse action, summary judgment must be denied. At a minimum, whether Burke's conduct was sufficiently severe to alter the conditions of Plaintiff's employment is a question for the jury.

## **CONCLUSION**

For the foregoing reasons, Plaintiff hereby requests that this Honorable Court deny

Defendant Neil Burke's Motion for Summary Judgment.

Dated: April 9, 2026

Respectfully submitted,
Joseph Pepicelli, Plaintiff
By His Counsel,


*/s/ Cassidy E. Almon*

Cassidy E. Almon, Esq. BBO# 710691
Law Offices of Steven J. Marullo
435 Newbury Street, Suite 217
Danvers, MA 01923
Tel: 617-723-1111
e-mail: cealmonlaw@gmail.com


CERTIFICATE OF SERVICE

I, Cassidy E. Almon, Plaintiff's counsel herein, hereby certify that on this 9th day of April, 2026, I served the foregoing by e-mail or by mailing a copy hereof, by first class mail, to all counsel of record herein.


*/s/ Cassidy E. Almon*

Cassidy E. Almon, Esq.